IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| William C. McKinnedy, III, ) | |
| Plaintiff, ) | Civil Action No. 6:08-3169-HMH-WMC |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Mrs. Cecil Reynolds, Warden at ) | |
| Kershaw Correctional Institution, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 102). The plaintiff, a state prisoner who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, claiming that his constitutional rights have been violated. The plaintiff alleges a myriad of claims against over 30 South Carolina Department of Corrections ("SCDC") staff and state government officials.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On April 8, 2009, the defendants filed a motion for summary judgment. On April 8, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On July 1, 2009, the defendants filed an amended memorandum in support of their motion. On September 11, 2009, the plaintiff filed his response in opposition to the motion for summary judgment, and the defendants filed a reply on October 8, 2009. On October 20, 2009, the plaintiff filed a sur-reply, and on October 28th, the plaintiff filed a supplement to his sur-reply.

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect

2

the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Lack of Service*

The plaintiff's complaint was filed on September 17, 2008. Defendant Caudle has not been served as shown by the return from the United States Marshals Service (*see* doc. 126).[1] Federal Rule of Civil Procedure 4(m) states that a defendant shall be dismissed if service is not accomplished within 120 days after filing of the summons and complaint. As more than 120 days have elapsed and defendant Caudle has not been served, the defendant should be dismissed from this action.

### *Failure to State a Claim*

Defendants Armstrong, Beckwith, Coleman, Dubose, Martin, McMaster, Murphy, Ozmint, Price, Sanford, Smith, Tatarsky, Vincent, Jacobs, Thomas, and Washington argue that they should be dismissed because the plaintiff's complaint fails to state a claim against them upon which relief can be granted. This court agrees.

The plaintiff alleges as follows with regard to these defendants:

#### Jerome Armstrong

The plaintiff states Mr. Armstrong, a Counsel Substitute at Kershaw Correctional Institution, is responsible for placing him in a pink jumpsuit, but does not state what action Mr. Armstrong took that caused him to be placed in a pink jumpsuit. The plaintiff further alleges

---

[1]The defendants also move for dismissal of defendant Neisman on this basis. Defendant Neisman has already been dismissed from this action by order of the Honorable Henry M. Herlong, Jr., now Senior United States District Judge, on June 4, 2009.

that he was not provided an Inmate Representative at a disciplinary hearing, but fails to allege that this was the fault of Mr. Armstrong or was even his decision. Based upon the foregoing, the plaintiff fails to state a claim against Mr. Armstrong.

### Donald Beckwith

The plaintiff states Mr. Beckwith, the Warden at Wateree Correctional Institution and previously the Associate Warden at Kershaw Correctional Institution, failed to respond to his Request to Staff and is liable concerning his grievances. As an inmate has no constitutionally protected right to a grievance procedure or access to any such procedure voluntarily established by a state, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), the plaintiff's claim regarding the processing of his grievance forms fails. Further, Mr. Beckwith cannot be held liable on a *respondeat superior* basis. The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has made no such showing here.

### Mary Coleman

The plaintiff states Ms. Coleman, the Chief of the Inmate Grievance Branch in Columbia, South Carolina, is liable for not enforcing the policy on the amount of time to process grievances. However, as "a state grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the

4

state's grievance procedure is not actionable under §1983." *Brown v. Dodson*, 863 F.Supp. 284, 284 (W.D. Va. 1994). Ms. Coleman cannot be held liable on a *respondeat superior* basis and, further, the plaintiff has not established that Ms. Coleman is liable for any constitutional injury inflicted by a subordinate. Therefore, the plaintiff fails to state a claim as to Ms. Coleman.

### Daniel Dubose

The plaintiff alleges that Mr. Dubose was the Administrative Captain at Kershaw Correctional Institution and, therefore, was liable for the actions of another officer. He makes no allegations against Mr. Dubose except that he was the Administrative Captain. Again, Mr. Dubose cannot be held liable on a *respondeat superior* basis and, further, the plaintiff has not established that Mr. Dubose is liable for any constitutional injury inflicted by a subordinate. Therefore, the plaintiff fails to state a claim as to Mr. Dubose.

### Linda Martin

The plaintiff alleges that Ms. Martin is liable for faxing a copy of a document granting the request for rehearing to Warden Reynolds. The plaintiff does not allege that she is the individual who approved the rehearing or had any involvement other than simply faxing a copy of the document to Warden Reynolds. The act of faxing this document clearly fails to state a claim against Ms. Martin.

### Henry McMaster

Mr. McMaster is the Attorney General of South Carolina. The plaintiff states that Mr. McMaster is liable for not informing the Director of SCDC that certain unspecified policies were allegedly inadequate or somehow violate the law. This court takes judicial notice that Mr. McMaster has no involvement with the operation of prisons, and the plaintiff fails to show he has violated his constitutional rights.

### Daniel Murphy

The plaintiff alleges that on September 1, 2006, Officer Caudle was attacked by another inmate. He alleges that he assisted Officer Caudle and that when she used chemical munitions to stop the inmate who was attacking her, he was also struck by the chemical munitions. He alleges the following in connection with this incident: first, that he was sprayed with chemical munitions; second, that Investigator Robinson interviewed two other inmates who were present, but failed to interview him; and, finally, that he was not given time off of his sentence or a pardon for allegedly saving Officer Caudle's life. The plaintiff argues Mr. Murphy is liable because he is the Inspector General for the SCDC and has supervisory responsibilities over Investigator Robinson. The plaintiff makes no allegations against Mr. Murphy, but alleges he has somehow has violated his constitutional rights. Mr. Murphy cannot be held liable on a *respondeat superior* basis and, further, the plaintiff has not established that he is liable for any constitutional injury inflicted by a subordinate. Therefore, the plaintiff fails to state a claim as to Mr. Murphy.

### Jon Ozmint

The plaintiff alleges Mr. Ozmint, the Director of the SCDC, is liable for the actions of defendant Caudle because he has approved officers using chemical munitions as a weapon to punish inmates. The plaintiff sets forth no basis for this statement and does not allege that Director Ozmint was even present or had knowledge of the incident involving defendant Caudle. The plaintiff also alleges that Director Ozmint did not approve the taking of his good time credits as he claims is required under statute. The plaintiff fails to state a claim against Director Ozmint. Director Ozmint cannot be held liable on a *respondeat superior* basis and, further, the plaintiff has not established that he is liable for any constitutional injury inflicted by a subordinate. Therefore, the plaintiff fails to state a claim as to Director Ozmint.

### Mark Sanford

It is unclear from his complaint, but it appears that the plaintiff is complaining that Governor Sanford is somehow liable because he hired Director Ozmint and further that Governor Sanford is somehow liable for the acts of all individuals as they are State employees. The plaintiff points to no specific act by Governor Sanford. This court takes judicial notice of the fact that Governor Sanford is not involved with the day-to-day operation of prisons in South Carolina. Governor Sanford cannot be held liable on a *respondeat superior* basis and, further, the plaintiff has not established that he is liable for any constitutional injury inflicted by a subordinate. Therefore, the plaintiff fails to state a claim as to Governor Sanford.

### Tony Smith

The plaintiff alleges that Lieutenant Smith ordered another officer, defendant Wakeley, to give the plaintiff back his key to his lock and failed to write up defendant Wakeley for insubordination when he allegedly did not obey. Whether or not Lieutenant Smith wrote up Mr. Wakeley for insubordination or not does not state a constitutional violation as to the plaintiff and fails to state a claim against defendant Lieutenant Smith.

### David Tatarsky, Bart Vincent, and Robert Wesley Jacobs

The plaintiff claims that these defendants, attorneys for the SCDC, are liable for not advising the grievance branch that SCDC policy must be enforced and for not reporting the SCDC to the Attorney General because of allegedly inadequate policies. As attorneys, they have an obligation to their client, the SCDC, and not to the plaintiff. The plaintiff fails to show any constitutional violation by these individuals.

### John Thomas

The plaintiff claims Mr. Thomas is liable because he was the Shift Captain at Kershaw Correctional Institution when the incident involving Officer Caudle occurred. He states that Captain Thomas informed Officer Caudle to use more mace because she did not use enough the first time. The plaintiff fails to show a constitutional violation by Captain

Thomas simply by the fact that he was the Shift Captain or that allegedly instructed Officer Caudle to use more chemical munitions as this may have been required to stop the attack by the other inmate. Mr. Thomas cannot be held liable on a *respondeat superior* basis and, further, the plaintiff has not established that he is liable for any constitutional injury inflicted by a subordinate. Therefore, the plaintiff fails to state a claim as to Mr. Thomas.

### Jerry Washington

The plaintiff states that Mr. Washington, the Associate Warden at Kershaw Correctional Institution, was liable for the actions of Officer Caudle, which have been discussed above, and because he was moved from one cell to another as referenced in his complaint. The plaintiff actually states in his complaint that either Mr. Washington or "whomever was active major at the time" is responsible. The plaintiff has clearly failed to show any constitutional violation on the part of Mr. Washington as he is claiming only that he is liable for the actions of another officer and by his own statement does not even know if he is the proper individual. Mr. Washington cannot be held liable on a *respondeat superior* basis and, further, the plaintiff has not established that he is liable for any constitutional injury inflicted by a subordinate. Therefore, the plaintiff fails to state a claim as to Mr. Washington.

The plaintiff in this case has failed to satisfy the requirements of Federal Rule of Civil Procedure 8. As shown above, he has failed to make specific allegations as to how these defendants violated his rights. Further, the plaintiff's conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross,* 759 F.2d at 365. Accordingly, the plaintiff's claims against the above-named defendants should be dismissed.

***Substantive Claims***

## Grievances

The plaintiff alleges that his grievances have been handled improperly. "Inmates do not have a constitutionally protected right to a grievance procedure." *Brown v. Dodson*, 863 F.Supp 284, 285 (W.D. Va. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991)). As the Fourth Circuit Court of Appeals has stated, "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick*, 932 F.2d at 729). Even if the plaintiff had a right to claim such in this action, the defendants have submitted several affidavits in support of their motion for summary judgment showing that the plaintiff's grievances were handled properly (*see* Hardin, Reynolds, Bowie, Ward, Patterson affs.). Based upon the foregoing, the plaintiff's claims on this matter fail.

## Locker Key

The plaintiff also complains that one of his locker keys was taken improperly by Sgt. Wakeley. Sgt. Wakeley stated in his affidavit that he is currently a Sergeant at Wateree Correctional Institution, but until November of 2007 he was the Contraband Officer at Kershaw. He stated he does not recall the date, but he does recall an instance where officers were doing random searches and found an inmate who had three locker keys. In the past, indigent inmates were issued a padlock and two keys. The padlock was used to secure their locker where they keep personal belongings. Inmates were not issued more than two keys and should not have more than two keys in their possession. He stated they asked the inmate who the extra key belonged to, and the inmate took them to the plaintiff's locker and opened the locker.

The officers then confiscated the key as it was considered contraband because inmates are not allowed to have anything in their possession that belongs to another. According to Sergeant Wakeley, this policy is in place in order to help promote the overall

security of the institution. Preventing inmates from trading personal property cuts down on matters such as loan sharking, robbery, and other illicit matters such as murder for hire. If inmates were allowed to freely trade their property back and forth, it would be impossible for correctional officers to determine who the items actually belonged to if this matter came into controversy. It would also allow inmates to have items to barter with or to provide to other inmates for illicit or improper reasons. The policy of not allowing inmates to have the property of another inmate in their possession is in place in order to promote the overall security of the Institution and to protect the security of both inmates and correctional officers. Even though the plaintiff stated he had given the key to another inmate, officers cannot always determine if the inmate is being coerced or forced into saying that he gave the item to another inmate.

Sergeant Wakeley testified that both the plaintiff and the inmate in possession of the plaintiff's key could have been charged with a disciplinary charge for Possession of Contraband, but neither inmate was charged. Sergeant Wakeley stated even though the plaintiff was not charged, he became irate when the key was confiscated and cursed the officers for taking the key. The plaintiff at this point could have been charged with several disciplinary offenses, including Threatening to Inflict, Vulgar Language, and Disrespect, but no charges were placed against him. Instead, the plaintiff was placed in a holding cell for approximately one hour to allow him to calm down and keep the situation from escalating. The plaintiff later went to other officers, including a lieutenant and sergeant, to try and get the key back, but all officers told him the key would not be returned as it was contraband. The plaintiff also wrote a Request to Staff to Sergeant Wakeley requesting he return the key, but he informed him the key would not be returned because it was contraband. Sergeant Wakeley stated that no officer, including Lieutenant Smith, instructed him to return the key to the plaintiff (Wakeley aff.).

The plaintiff also claims that Lieutenant Audrey Price was the Sergeant over contraband and did not get his key back to him. Lt. Price stated that she is currently a

10

Lieutenant at Kershaw but in 2006 was the Sergeant over contraband. She stated she knows the plaintiff, but does not recall the incident raised by the plaintiff in his complaint concerning confiscation of a padlock key. Lt. Price stated inmates are provided an Inmate Handbook when they enter SCDC that clearly states inmates are not allowed to have anything in their possession that belongs to another inmate and, if they do, the item will be considered contraband. The Inmate Handbook also clearly states that inmates are not allowed to give any personal item to another inmate and, if they do, the item will be considered contraband. She stated that in her opinion, based on the facts in the plaintiff's complaint, the key should not have been returned to the plaintiff as it was clearly contraband. She also stated that at a no time did she instruct Sergeant Wakeley or any officer to return the key to the plaintiff (Price aff.).

The plaintiff also claims that defendants Robert Huggins and Richard Baytes,[2] both Commissary Managers at Kershaw, are liable as they failed to have a "comprehensive plan" stating what inmates can do with personal property. In their affidavits, Mr. Huggins and Mr. Baytes testified that the Commissary issues items to inmates such as clothing, shoes, and blankets. They also stated that though this is not done currently, in the past indigent inmates were issued a padlock and two keys. The padlock was used to secure their locker where they keep personal belongings. Both stated there is no need to develop a "comprehensive plan" as referenced by the plaintiff as the Inmate Handbook clearly states inmates may not have personal property of other inmates and their possession (Huggins and Baytes affs.).

The Fourth Circuit Court of Appeals stated that "[a] prison regulation 'is valid if it is reasonably related to legitimate penalogical interest.'" *United States v. Stotts*, 925 F.2d 83, 85-86 (4th Cir. 1991) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The policy in the present case of not allowing inmates to trade or possess personal property from another inmate is clearly in place to promote the safety of inmates and correctional officers and

---

[2]The plaintiff improperly identified Richard Baytes as James Baytes.

promotes the essential objective of prison administration, safeguarding institutional security. As the plaintiff was, by his own admission, in clear violation of this policy, his claim should be dismissed.

The plaintiff has also failed to state a constitutional violation for the alleged deprivation of his personal property. The United States Supreme Court stated that:

> [A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

In the present case, the plaintiff has neither alleged nor offered any evidence to show that he does not have such a remedy under state law, and there is no such evidence. It is clear that the plaintiff had an adequate post-deprivation remedy available to him under the South Carolina Tort Claims Act. Based upon the foregoing, this claim also fails.

### Cell Assignment

The plaintiff next claims that the defendants violated his rights by moving him from one cell to another. Specifically, the plaintiff claims that his cellmate told officers that the plaintiff had threatened him, but then the cellmate refused to be placed in Protective Custody. The plaintiff claims Major Seward forced him to move to another cell in the middle of the night and that this violated his rights. Major Seward in his affidavit stated that he is currently a Major at Kershaw, but in August of 2006 he was a shift captain. He stated that he knows the plaintiff, but does not recall the incident where the plaintiff alleges he was moved to a new cell on August 24, 2006. Major Seward stated that, though he does not specifically recall the incident referenced by the plaintiff, in general if there is a situation where an inmate states that he has been threatened by his cellmate, the inmate will first be asked if he would like to be placed in

Protective Custody.  If the inmate does not want to be placed in Protective Custody, officers will then attempt to move one of the inmates to another cell to separate them and avoid future problems.  He stated the decision as to which inmate is moved is primarily based on which inmate is a better fit or match for the available cells (Seward aff.).

There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution.  *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); and *Lyons v. Clark*, 694 F. Supp. 184, 186-87 (E.D. Va. 1988) (collecting cases).  It is known from other cases previously decided in this district that South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison.  *See*, *e.g.*, *Keeler v. Pea*, 782 F. Supp. 42, 43-44 (D.S.C. 1992) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)).  Clearly the plaintiff has no right to be housed in a particular cell.  Accordingly, this claim fails.[3]

## Pink Jumpsuit

The plaintiff next claims that he was improperly placed in a pink jumpsuit.  The plaintiff fails to state any facts concerning this claim other that to simply state that several defendants are liable for placing him in a pink jumpsuit.  The defendants have first attached the affidavit of Annie Sellars, a Disciplinary Hearing Officer for SCDC, concerning this issue.  Ms. Sellars stated that she works at several institutions, including Kershaw.  She stated that as a Disciplinary Hearing Officer, she presides over hearings concerning disciplinary offenses and makes a determination whether inmates are found guilty or not guilty of disciplinary

---

[3]The plaintiff also names Associate Warden Jerry Washington and Retired Warden Oscar Faulkenberry as defendants with regard to this issue.  Associate Warden Washington did not begin work at Kershaw until October 17, 2006, and thus can have no knowledge of the matter, which the plaintiff claims took place on August 24, 2006 (Washington aff.).  Furthermore, Mr. Faulkenberry retired from the  SCDC on June 30, 2006 and has not worked for the SCDC in any capacity since that date. Clearly, these defendants can have no liability in this matter.

offenses in the prisons. She stated inmates are required to wear a pink jumpsuit if they have a disciplinary conviction for Sexual Misconduct or Exhibitionism and Public Masturbation. The plaintiff's records show that he was charged with Exhibitionism and Public Masturbation on August 23, 2006, for masturbating in the presence of a female officer. The plaintiff was served with a Form 19-69 on August 27th, and a hearing was held on September 4, 2006. The plaintiff did request a Counsel Substitute at the hearing, but he was not entitled to a Counsel Substitute pursuant to SCDC policy because he has above a 12th grade reading level. The plaintiff also requested Counsel Substitute Armstrong to testify that the officer could not have seen him where he was, but the plaintiff himself testified that the officer could have seen him if she looked in the window, so Mr. Armstrong's testimony was not relevant on that issue. The plaintiff was found guilty of Exhibitionism and Public Masturbation and required to wear a pink jumpsuit for three months. Based on her review of the plaintiff's records, this charge has not been overturned, reversed on direct appeal, expunged by executive order, or otherwise declared invalid. Ms. Sellars stated that in all disciplinary hearings, including those with the plaintiff, she bases her decision on the evidence before her and makes an appropriate decision based on the evidence (Sellars aff.).

      The defendants have also attached the affidavit of Jerome Armstrong, a Counsel Substitute at Kershaw. As noted above, the plaintiff failed to state how Mr. Armstrong is responsible for him being placed in a pink jumpsuit. Mr. Armstrong testified that though he recalls the plaintiff being in a pink jumpsuit, he has no knowledge concerning the disciplinary conviction which required him to wear the pink jumpsuit. Mr. Armstrong stated that as a Counsel Substitute he assists inmates who have been charged with a disciplinary violation get their witnesses, helps inmates prepare for the hearing and discusses with them what the charge entails, including the punishment if found guilty, and will help them present evidence and question witnesses. If an inmate has difficulty reading, he will help them read the charges against them and assist them as discussed above. SCDC policy states that inmates in the

general population who have a sixth grade reading level or above are not entitled to a Counsel Substitute. He will, however, assist inmates in the general population that have above a sixth grade reading level with speaking with inmate witnesses from another unit if the inmate sends a Request to Staff requesting assistance and provides the name of the witness (Armstrong aff.).

Mr. Armstrong stated the plaintiff has over a 12th grade reading level and pursuant to SCDC policy is not entitled to a Counsel Substitute. He stated he does not have any involvement with determining an inmate's reading level, but this is contained in their inmate record. He stated he does not recall ever receiving a Request to Staff from the plaintiff where he requested assistance from him as Counsel Substitute. He stated he has seen the plaintiff numerous times, and the plaintiff will speak with him and request various things, but the plaintiff has never made a request to him in relation to his job as Counsel Substitute (Armstrong aff.).

To the extent the plaintiff is attacking his disciplinary conviction, his claim fails. The evidence before this court shows that the defendants complied with SCDC policy that inmates in the general population who have a sixth grade reading level or above are not entitled to a Counsel Substitute. Further, the law is clear that courts give great deference to the findings of prison disciplinary committees. The District Court for the Eastern District of Virginia stated "the Court does not sit to review the factual findings of prison disciplinary committees." *Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D. Va.1980). The Second Circuit Court of Appeals has addressed this issue stating that the court should not overturn a prison disciplinary board's finding of guilt if there is any evidence to support the conclusion. *See Franco v. Kelly*, 854 F.2d 584, 588 (2nd Cir. 1988). Here, there was clearly evidence to support the Disciplinary Hearing Officer's finding that the plaintiff was guilty of Exhibitionism and Public Masturbation. Based upon the foregoing, this claim fails.

**Good Time Credits**

The plaintiff next complains that defendants improperly took 15 days of good time credits from him per instruction of the Administrative Law Judge. Ms. Sellars, a Disciplinary Hearing Officer for the SCDC, testified that when an inmate is charged with a disciplinary offense, the inmate is served with a Form 19-69 at least 24 hours before the hearing. On the Form 19-69, the inmate can waive his right to a 24-hour notice, his right to have his accuser present, his right to be present, and his right to a Counsel Substitute, if he is so entitled. When an inmate is served with a Form 19-69, the inmate must sign to show that he has received it. If the inmate refuses to sign the Form 19-69, the inmate then automatically forfeits his right to have his accuser present and to present witnesses.

Ms. Sellars stated that at the disciplinary hearing, she hears all the evidence and renders a decision based on the evidence. She stated that after reaching a decision, she provides her decision and the basis of her decision and, if the inmate is found guilty, informs the inmate of his sanctions, his right to appeal and how he must effectuate the appeal, including that the appeal must be done within 15 days of the date of the hearing. She also provides the inmate the completed Form 19-69, which sets forth the decision and sanctions, if found guilty. After explaining to the inmate his right to appeal, she also offers the inmate a grievance form that is the method by which inmates appeal disciplinary convictions. Ms. Sellars stated she is present at Kershaw one day per week to conduct hearings, and her assistant at Kershaw receives the disciplinary charges and makes sure that inmates are served with a Form 19-69 at least 24 hours before the hearing.

Ms. Sellars stated that she went to Kershaw on August 2, 2007, to conduct disciplinary hearings and was informed that they had received an Order from the Administrative Law Judge ("ALJ") stating that the plaintiff had filed several frivolous grievances. The ALJ ordered that the plaintiff be "sanctioned with the loss of not less than fifteen (15) days good time credits to discourage such appeals in the future." Ms. Sellars was

also informed that the plaintiff had been given a Form 19-69 more than 24 hours prior to the scheduled hearing. She stated this was the first hearing of this nature she had ever handled. She stated she went forward with the hearing as she did not realize at the time that the plaintiff should have been served with an Appendix B instead of a Form 19-69. The plaintiff was found guilty of the charge based on the ALJ's order. Ms. Sellars ordered that 15 days of good time credits be taken from the plaintiff in accordance with the ALJ's order.

Ms. Sellars stated that after the hearing she determined that the plaintiff should have been served with an Appendix B instead of a Form 19-69, and she wrote an Incident Report and forwarded it to the Warden explaining the situation. The Warden wrote a request to SCDC Headquarters for the case to be reheard. The request for rehearing was granted, and the plaintiff was served with an Appendix B on August 8, 2007. The plaintiff refused to sign for the Appendix B. Unlike the Form 19-69, the Appendix B does not give the inmate the right to have his accuser present and, as a practical matter, this would not have been possible as the ALJ was the accusing party in this matter (Sellars aff.).

Ms. Sellars stated that a rehearing was held on August 15, 2007. She stated it was her best recollection that the plaintiff requested the ALJ who issued the order be present at the hearing, and he was provided a copy of the order. The plaintiff was found guilty based on the ALJ's order, and the sanction was the loss of 15 days good time. The plaintiff was advised of his right to appeal and was provided a grievance form. The plaintiff was not sanctioned twice, but was sanctioned only for a total of 15 days of good time. The sanction of 15 days good time took the place of the sanction from the prior hearing (Sellars aff.).

Furthermore, according to Ms. Sellars' testimony, there was no actual loss of good time by the plaintiff as he did not have any good time when this sanction was imposed. As the plaintiff did not have any good time, none could be taken. Furthermore, the SCDC will not take good time even if the plaintiff earns it after the hearing. Therefore, the plaintiff did not and will not lose any good time credits as a result of this matter (Sellars aff.).

To the extent the plaintiff is challenging his disciplinary conviction, his claim fails. The law is clear that courts give great deference to the findings of prison disciplinary committees. The District Court for the Eastern District of Virginia stated "the Court does not sit to review the factual findings of prison disciplinary committees." *Kelly*, 502 F.Supp. at 1376. The Second Circuit Court of Appeals has addressed this issue stating that the court should not overturn a prison disciplinary board's finding of guilt if there is any evidence to support the conclusion. *See Franco*, 854 F.2d at 588. The Tenth Circuit Court of Appeals clearly set forth the standard for review stating:

> If there is some evidence to support the disciplinary committee's decision to revoke good time credits, then the requirements of procedural due process have been met. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of evidence. Instead, the relevant conclusion is whether there is any evidence that could support the conclusion reached by the disciplinary board." The decision can be upheld even if the evidence supporting the decision is "meager".

*Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996) (internal citations omitted).

In the present case, there is clearly some evidence to support Ms. Sellars' decision. Further, the plaintiff's claims against defendant James Wakeley, who served the plaintiff with the Appendix B for the hearing discussed above, and Linda Martin, who in her position as Administrative Assistant in the Division of Operations may have faxed the documents granting approval for the rehearing to Warden Reynolds, clearly do not state a claim of constitutional magnitude. The plaintiff also claims that Warden Reynolds and defendant Ward, the Director of the Division of Operations for the SCDC, violated his rights in some unspecified manner by approving the request for rehearing. The plaintiff fails to set forth any law to show the rehearing was improper in this case. Furthermore, the plaintiff's claim is moot. The Fourth Circuit Court of Appeals stated, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the out-come."

*Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). As discussed above, the plaintiff had no good time credits when the sanction was imposed, and the SCDC will not take good time even if the plaintiff earns it after the hearing. Therefore, even though there was a sanction that 15 days of good time credits be taken from the plaintiff, he did not and will not lose any good time as a result of this matter. Based upon the foregoing, the plaintiff's claim fails.

### September 1, 2006, Incident

The plaintiff next complains about an incident that he claims occurred September 1, 2006. He alleges that on that date Officer Caudle was attacked by another inmate. He alleges that he assisted Officer Caudle and that she used to chemical munitions to stop the inmate who was attacking her. He claims that he was struck by the chemical munitions. He also complains that defendant Sylvester Robinson, the Investigator at Kershaw, interviewed two other inmates who were present during the incident, but failed to interview him. Lastly, he complains that he was not given time off of his sentence or a pardon for allegedly saving Officer Caudle's life.

Mr. Robinson stated in his affidavit that he investigated the incident where Officer Caudle was attacked by an inmate in the medical department on August 31, 2006. Mr. Robinson stated Officer Caudle was attacked by Inmate Zanders, and she sprayed him with chemical munitions to stop the attack. He determined in his investigation that the plaintiff did not assist Officer Caudle, but two other inmates who were present did assist her. He stated that in his investigation, he determined that Officer Caudle acted appropriately and used the chemical munitions to attempt to stop the attack by Inmate Zanders. He further stated that Officer Caudle was injured in this incident and has retired from SCDC due to the injuries she received in this attack. Mr. Robinson testified that he uses his discretion to determine whom he needs to interview when he conducts an investigation. After interviewing the two inmates

who assisted Officer Caudle, he determined that he had adequate information and there was no need to interview the plaintiff (Robinson aff.).

Defendant Daniel Murphy, the Inspector General for the SCDC, testified that he is not aware of any SCDC policy stating that an inmate who assists an officer will be released from SCDC or have their sentence reduced. Also, contrary to the plaintiff's allegations, the other inmates who assisted Officer Caudle did not have their sentences reduced (Murphy aff.). The plaintiff's allegations that his constitutional rights were violated because he was not interviewed by Investigator Robinson and did not have his sentence reduced are clearly without merit.

The plaintiff has failed to show excessive force with regard to this incident. The United States Supreme Court stated, "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*; whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992). Here, the evidence is clear that the use of force was appropriate and necessary to repel the inmate's attack on Officer Caudle. He does not allege that he was intentionally hit with the chemical munitions. The plaintiff has alleged nothing more than mere negligence in relation to his allegation that he was hit with chemical munitions. The United States Supreme Court has stated: "The Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property. In other words, where a governmental official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Based on the above, the plaintiff has failed to state a cause of action under Section 1983 with regard to this incident.

*Sentence*

In his response in opposition to the motion for summary judgment, the plaintiff argues that the defendants have somehow violated his constitutional rights because he was improperly sentenced for the criminal charges upon which he is currently incarcerated. The plaintiff claims that he was sentenced on February 3, 1999, and is being improperly required to serve 85% of his sentence of 18 years. As argued by the defendants, this issue was not raised in the plaintiff's complaint, and therefore it is not properly before this court. Furthermore, in a previous habeas corpus action, the plaintiff specifically raised this issue, and the court ruled that the plaintiff's claim had no merit. *See McKinnedy v. Faulkenberry*, C.A. No. 6:06-0641-HMH-WMC.

*Immunity*

The defendants also contend that they are entitled to qualified immunity in their individual capacities. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.* As discussed above, the plaintiff has failed to show that the individual defendants violated any of his clearly established or statutory rights. Therefore, the defendants are entitled to qualified immunity as to monetary damages.

Likewise, to the extent that the plaintiff sued these defendants in their official capacities for damages, these state officials are not "persons" within the meaning of 42 U.S.C. § 1983 and may not be sued. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

***Strike***

The defendants also move to have this action denominated a "strike" within the meaning of the Prison Litigation and Reform Act ("PLRA"). Where a plaintiff files a complaint *in forma pauperis*, as in this case, the district court may dismiss the action if satisfied that the action is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i). As the Supreme Court stated in *Neitzke v. Williams*, 490 U.S. 319 (1989), this statute allows judges "to dismiss a claim based on an indisputably meritless legal theory" and those "claims whose factual contentions are clearly baseless." *Id.* at 327. The plaintiff's action is frivolous, malicious, and fails to state a claim. Accordingly, this court recommends that it be counted as a strike pursuant to the court's authority under 28 U.S.C. § 1915(g).

## CONCLUSION AND RECOMMENDATION

The plaintiff has failed to state any claim of constitutional magnitude. Based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 102) be granted. Any pending nondispositive motions will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot.

s/William M. Catoe
United States Magistrate Judge

January 7, 2010

Greenville, South Carolina

22